PETER J. CANNON, PETITIONER, v. PUBLIC SERVICE
PRODUCTION COMPANY, RESPONDENT.

For the petitioner, *James J. Cannon.*

For the respondent, *James O. Boyd.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

The only question at issue in this case is whether the petitioner has any disability as the result of an accident, and, if so, to what extent.

Peter J. Cannon, the petitioner, is sixty-four years of age, and for years and to the time of his accident was actively engaged in his occupation of plasterer. It appears that on January 12th, 1926, he was plastering the elevator shaft while standing on the top of the cage, when an iron bar fifteen inches long and weighing approximately six pounds, became dislodged from overhead in some manner and struck him in the region of the left shoulder and back.

Dr. Carlough, who treated him, first testified that he was brought to his office suffering from shock, he was white and his pulse was high. He treated him nine times to January 31st. His injury was over the left shoulder and back, which were extremely sensitive the first three or four days. He had to be helped around in bed. He did not order an X-ray to be taken, as, in his opinion, there was not enough evidence to warrant it. There was very little discoloration on his back, although he complained of pain around the shoulder blade down to the fifth and sixth vertebræ. When he saw him last

he told him to try and do some light work, he didn't think he was suffering any permanent disability. On cross-examination he admitted he might have been wrong in his diagnosis.

Dr. Andrew F. McBride testified that he treated the petitioner dozens of times, beginning with two months after the accident until recently. He found him very tender over his spine four to five inches below the shoulder blade. After strapping him he referred him for an X-ray to Dr. Wilkinson. Dr. McBride testified to some arthritic changes over the lower dorsal vertebræ, that he could not any longer do the usual work of a plasterer except very nominal work, that the pain was most intense below the left scapula, and in answer to a hypothetical question, he was of the opinion that the accident caused his present condition.

Dr. Wilkinson interpreted the X-rays which he took at the instance of Dr. McBride. He found arthritic changes around the eleventh and twelfth dorsal vertebræ, cloudiness of the intervertebral spaces, and a slight lipping at the anterior edges of the seventh and eighth vertebræ.

Dr. Bryan C. McGinniss concluded the testimony for the petitioner. In his one examination he found marked tenderness and muscular spasm on the left side of the spinal column from the eighth or tenth vertebræ to the lower part of the dorsal region. In answer to a hypothetical question, he was of the opinion that the accident caused his present condition, and concluded his direct testimony by estimating a permanent disability of twenty-five per cent. in terms of total disability. On cross-examination, he admitted that from his examination alone, and without a history of accident, he could not tell whether disease or trauma was the cause of his condition.

Dr. J. H. Wyatt was the first witness for the respondent, and, in his interpretation of the X-rays he took for the respondent, he was practically in accord with Dr. Wilkinson, who testified for the petitioner. He also found lipping between the seventh and eighth dorsal vertebræ and bridging between the eleventh and twelfth dorsal vertebræ. No evidence of fracture or bone destruction was revealed by his

X-ray and he was unable to find any disability as a result of the accident. The lipping is the usual condition in his opinion in people who have worked all their lifetime.

Dr. Charles F. Baker, an X-ray specialist, interpreted Dr. Wyatt's X-rays, and his opinion was, in substance, the same as that of Dr. Wyatt.

Four medical witnesses then testified in succession for the respondent, and they were all unable to discover anything abnormal objectively, and concluded that no permanent disability was in evidence as a result of the accident in question.

Dr. Walter Washington admitted the petitioner complained of pain on his examinations, and that on both occasions it was located between the shoulder blades.

Dr. Thomas M. Pascal testified that Mr. Cannon was unable to isolate the area of his pain with any degree of reliability, and that his examination was practically negative, as he found no objective evidence of injury.

Dr. Russell examined the petitioner solely on the day of the hearing and found that he complained of pain, not between the shoulder blades, but that the area of tenderness was below this region. He concluded by expressing the opinion that the petitioner had a condition of senility and beginning arterio sclerosis not induced by the accident.

The testimony of Dr. N. F. Fure, the concluding witness, was, in effect, the same as the preceding witness. He also found no objective evidence of back injury, and that his complaint was due to his senile condition.

It will be observed that of all the medical witnesses but two physicians actually gave him treatment. The rest, with the exception of the X-ray specialists, simply examined him one or more times. There is some testimony of his complaints of pain not being consistently located at all times in the same area. It does not always follow that the pain complained of must necessarily be confined to the exact point of impact. It may be referred to a reasonable distance from the location of the trauma. Depending on the circumstances of each case, it often cannot be located with mathematical exactness. Such, I think, is the situation in this case. Otherwise the medical

testimony resolves itself into no objective symptoms on the one side compared to a positive finding of some disability as a result of the accident on the other side.

At this juncture the testimony and demeanor of the petitioner is important. He testified that he was active in his occupation of plasterer up to the time of the accident, which testimony was corroborated by two other witnesses, that now he cannot do the work he was able to do before the accident, that he is unable to lie on his left or injured side, and that he is able to sleep very little at night.

In my opinion, senility does not manifest itself over night. There would be a gradual slackening in effort, whereas in the case at issue, the petitioner was able to do the hardest kind of plastering, such as ceiling work, before the accident, and thereafter he was confined to the lightest sort of employment such as pointing up. He impresses me as being a truthful witness, and gives evidence of being in pain as a result of the accident. It is well known that pain is subjective and often is not indicated by exterior symptoms. While physicians often can find no real objective basis for pain, neither can they positively testify to the absence.

I am accordingly making a finding in favor of the petitioner of permanent disability equal to twenty-five per cent. of total disability or one hundred and twenty-five weeks.

HARRY J. GOAS,
*Deputy Commissioner.*